*In re* CARLOS F. SANTOS VÍAS.

*Número:* AB-87-27 *Resuelto:* 13 de diciembre de 1988

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Mario A. Rodríguez Torres,* abogado de Carlos F. Santos Vías.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El ejercicio de nuestra jurisdicción disciplinaria en este asunto tiene como fundamento el siguiente trasfondo de hechos.(1)

La señora Cordero Rodríguez contrató al licenciado Santos Vías para que la representara en la demanda de divorcio presentada en el Tribunal Superior, Sala de Bayamón,

---

(1) Formulados en los documentos y correspondencias entre las partes unidos al informe del Procurador General, un examen de los autos originales de las causas judiciales y la comparecencia del abogado Santos Vías.

por su entonces esposo Ángel M. Molina (Civil Núm. 81-3305). Previos incidentes relativos a una pensión provisional, honorarios *pendente lite* y una enmienda en que se invocó la causal de *separación*, finalmente se dictó sentencia disolviendo el vínculo matrimonial. Subsiguientemente, el tribunal reinstaló y concedió a la señora Cordero Rodríguez una pensión alimenticia.

Al tiempo, Ángel M. Molina presentó en el mismo foro una demanda sobre división de gananciales (Civil Núm. 83-2738 (502)). La señora Cordero Rodríguez acudió nuevamente al licenciado Santos Vías para que la representara. Le informó que en el inventario relacionado en la demanda, Ángel M. Molina había omitido ciertos bienes gananciales. Éste aceptó la encomienda y le comunicó que sus honorarios "serían a base del 15% de los bienes que le correspondieran en liquidación o $6,000.00 la cantidad que fuera menor y *que para no gravar su casa*, los honorarios se pagarían de los demás bienes o créditos que se reclamaban en la Reconvención y que negaba el demandante". *Exhibit* IV, pág. 17. Al decir del licenciado Santos Vías, no le requirió anticipadamente depósito para gastos, pues "era cliente de la oficina" y a ella "nunca le preocupó la cantidad de honorarios a pagar *siempre que se le garantizara que a ella le correspondería la casa donde resid[í]a* y el carro que utilizaba". (Énfasis suplido.) Íd. Medió, pues, un acuerdo verbal sobre los honorarios. El licenciado Santos Vías contestó la demanda, presentó una reconvención y, oportunamente, realizó varias gestiones profesionales conducentes a identificar y a valorar los bienes adicionales.

Posteriormente, ella suscribió un contrato escrito sobre honorarios que tenía ciertos renglones rutinarios en blanco. Esta situación motivó después un malentendido e incidente entre ambos, que con el tiempo culminó en que el licenciado Santos Vías pidiera al foro judicial que se le relevara de continuar representándola. Lo hizo mediante moción suscrita el

21 de mayo de 1984. En la misma, adujo la existencia de serias discrepancias y hostilidades entre ambos. En el acápite tercero consignó: "Que el abogado que suscribe *no ha cobrado un s[ó]lo centavo en concepto de honorarios de abogado a la demandada* por las gestiones realizadas en [e]ste caso *y no tiene intención de cobrar los mismos.*" (Énfasis suplido.) *Exhibit* VIII, pág. 28. El tribunal accedió el 28 de mayo.

Poco tiempo después, la señora Cordero Rodríguez, como demandada en ese pleito de liquidación de bienes gananciales, gestionó directa y personalmente con los abogados del demandante Ángel M. Molina una estipulación transaccional que puso fin al caso. En virtud de la misma, logró que se le adjudicara, por la Escritura Núm. 10 de 5 de octubre de 1984 ante el notario Ángel L. Tapia Flores, *su casa en la Calle José E. Pedreira HN-65, Levittown,* un Datsun 1976 y retener la posesión de otros bienes. Concluimos que este acuerdo, en lo esencial, fue producto del fruto de las investigaciones y diligencias profesionales realizadas por el licenciado Santos Vías antes de su renuncia, incluso la reconvención.

El 11 de octubre de 1985, después de varias gestiones extrajudiciales infructuosas tendentes a cobrar $650 de gastos desembolsados, el licenciado Santos Vías, por propio derecho, demandó a la señora Cordero Rodríguez en el Tribunal de Distrito, Sala de Toa Alta (CD-85-1570). Fundó esta causa de acción precisamente en los servicios profesionales prestados en relación con el pleito de liquidación de los bienes gananciales (Civil Núm. 83-2738) antes aludidos y el contrato verbal de 15% o $6,000 (cantidad que fuera menor). En el párrafo cuarto de su demanda expuso que "[s]e acordó que el pago de [h]onorarios hasta donde fuera posible no se haría gravando la propiedad ganancial donde residía la [señora Cordero Rodríguez] y s[í] de las demás propiedades gananciales que se reclamaban. . .". *Exhibit* VI, pág. 21. Pidió,

además, $650 en gastos incurridos en las gestiones relacionadas, consistentes de dos (2) visitas al Bo. Mameyes de Utuado a investigar y a fotografiar unas propiedades y varias visitas a dos (2) bancos, al Registro de la Propiedad y al Departamento de Transportación y Obras Públicas.

La señora Cordero Rodríguez fue emplazada el 15 de octubre de 1985. No contestó por escrito y le fue anotada la rebeldía. El 12 de diciembre de 1985 se celebró la vista. Ella compareció sola y no contrainterrogó. El licenciado Santos Vías declaró y sometió dos (2) cartas de requerimiento de cobro, una (1) certificación del Registro de la Propiedad y varias fotografías. El 16 de diciembre de 1985, el Tribunal de Distrito dictó sentencia en rebeldía por la suma de *$6,650*, costas y gastos. Una vez notificada, final y firme, el licenciado Santos Vías solicitó y obtuvo su ejecución contra la propiedad en la Calle José E. Pedreira HN-65, Levittown, *residencia* de la señora Cordero Rodríguez. Oportunamente, fue subastada por esa cantidad al Lcdo. Mark C. Jiménez en representación de Olympic Mortgage Bankers Corp. Mediante cheque, el licenciado Santos Vías cobró *in toto* la sentencia el 24 de octubre de 1986. La señora Cordero Rodríguez fue obligada por un alguacil a desalojar la residencia.

Contra esta actuación, la señora Cordero Rodríguez se quejó ante el Procurador General y, finalmente, ante este Tribunal. El sustrato de su súplica es que se le "devuelva [su] hogar". *Exhibit* I, pág. 6.

II

Con vista a estos hechos, por considerar meritoria la queja, ordenamos al Secretario del tribunal que procediera a remitir copia del informe del Procurador General al licenciado Santos Vías. Le concedimos término para que compareciera por escrito a mostrar causa por la cual no debería formulársele querella disciplinaria. En nuestra resolución le aclaramos que ese trámite era sin menoscabo de que devol-

viera a la señora Cordero Rodríguez "el valor representativo del *crédito de la propiedad subastada,* en consideración a su compromiso judicial de renunciar a cobrar honorarios de abogado según expresado en su moción del 21 de mayo de 1984 antes aludida, apuntalado en el acuerdo de *siempre excluir dicha propiedad* de cualquier contingencia o riesgo de cobro de tales honorarios". (Énfasis suplido.) Resolución de 30 de junio de 1988, págs. 5–6.

En su comparecencia, por conducto del letrado Mario A. Rodríguez Torres, el licenciado Santos Vías alude a sus quince (15) años como profesional de derecho sin quejas o querellas en su contra. Expone su dedicación a actividades cívicas y deportivas ejemplares en Bayamón. No cuestiona los hechos esenciales antes relacionados. Nos dice que su proceder respondió a que "toda la conducta de la querellante [señora Cordero Rodríguez] no tenía otro propósito que lograr su renuncia y economizarse el justo pago por su trabajo". Comparecencia de 9 de septiembre de 1988, pág. 4. Se aduce que es frente "a esta percepción de *injusticia* que el Lic. Santos Vías, *quizás comete el error de juicio de iniciar* los trámites de reclamar, primero extrajudicial y luego judicialmente el pago de los servicios prestados". (Énfasis suplido y en el original.) Íd. Argumenta que su actuación no fue para "molestar o perjudicar a la parte contraria, haciéndola víctima de opresión o daños. . . [ni] motivada por un af[á]n de lucro, ni con el propósito de molestar a la querellante. *Hoy reconoce el Lcdo. Santos Vías que en una situación similar no reaccionaría de la misma manera*". (Énfasis suplido.) Íd., pág. 5. Finalmente, concluye:

> Recapitulando entendemos que si algo hubo incorrecto en la conducta del Lcdo. Carlos Santos Vías fue producto de un error de juicio y de ello da fe la conducta profesional y personal del Lcdo. Santos Vías, en su vida diaria.
>
> Entendemos que no hubo conducta [é]tica de tal magnitud que *justifique el que se formule querella disciplinaria contra*

*el Lcdo. Santos Vías sobre todo, cuando el trámite presente ha representado angustia y penar personal y familiar de suficiente envergadura como para servir de lección.*

No queremos concluir nuestra comparecencia sin notificarle a este Honorable Tribunal que el Lcdo. Carlos Santos Vías tiene disponible *los seis mil dólares ($6,000.00) reclamados como honorarios para ser devueltos a la querellante—Doña Eufracia Cordero Rodríguez.* Habremos de iniciar la comunicación correspondiente con el Honorable Procurador General a los fines de que nos asista en la devolución de dicho dinero a la querellante. (Énfasis suplido.) Comparecencia de 9 de septiembre de 1988, págs. 5–6.

### III

Ante los hechos expuestos, nuestra adjudicación está forzosamente limitada por el marco, un tanto estrecho, de nuestra jurisdicción disciplinaria. Por ende, no podemos acoger el ruego de la señora Cordero Rodríguez de que le devolvamos su hogar.[2] No obstante, ello no es impedimento para aproximarnos a ese pedido —en virtud de nuestra indeclinable función rectora de hacer justicia— y así proveer un remedio equivalente que restaure, en lo posible, los bienes lesionados por razón de conducta antiética.

---

[2] No nos compete en esta instancia —y nos abstendremos— de examinar si la sentencia dictada en rebeldía es susceptible de ser atacada bajo el fundamento de *fraude* que provee el inciso (3) de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La misma establece dos (2) tipos de fraude: "interpartes" y al tribunal. Si es "fraude entre partes la moción de relevo debe ser presentada dentro del término de seis meses. En los casos de fraude al tribunal puede éste dejar sin efecto la sentencia *sin* limitación de tiempo alguno". (Énfasis suplido.) *Municipio de Coamo v. Tribunal Superior,* 99 D.P.R. 932, 939 (1971). En dicho caso dijimos que *fraude al tribunal* cubre "'sólo aquellos tipos de fraude cuyo efecto o cuya intención es mancillar al tribunal como tal, *o que es fraude perpetrado por oficiales del tribunal,* de tal forma que la maquinaria judicial no pueda ejercer como de costumbre su imparcial labor de juzgar los casos que se le presentan para adjudicación'". (Énfasis suplido.) *Municipio de Coamo v. Tribunal Superior,* supra, pág. 939. Bajo esta categoría cae "la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la parte adversa por medio del soborno y la instigación al perjurio . . .". *Martínez v. Tribunal Superior,* 83 D.P.R. 358, 360 (1961).

 Bajo este prisma, al evaluar la acción del licenciado Santos Vías se destaca su carácter clásico y *dual* como abogado de una parte que, sin perder su condición de *funcionario del tribunal*, se transforma en abogado parte contra aquélla. Este binónimo ocasional se proyecta sobre el marco del Código de Ética Profesional en las dimensiones deontológicas siguientes:

1. *Canon 17*. Prohíbe llevar un pleito civil cuando se estuviere convencido de que se pretende por medio del pleito molestar o perjudicar a la parte contraria, haciéndola víctima de opresión o de daño. A su amparo, la comparecencia del licenciado Santos Vías —en este caso abogado y parte— subraya el elemento de que su firma en las alegaciones de la demanda significa que, en su opinión, el caso es "uno *digno de sanción judicial*", y está bien fundado.

2. *Canon 23*. "La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta." 4 L.P.R.A. Ap. IX.

3. *Canon 24*. En la fijación de honorarios *no* debe estimarse los consejos y servicios en más ni en menos de lo que realmente valen.

4. *Canon 25*. Ordena expresamente que las "controversias con los clientes con respecto a la compensación *deben evitarse* por el abogado en todo lo que sea compatible con el respeto a sí mismo y con el derecho que tenga a recibir una *compensación razonable* por los servicios prestados. *Solamente deben establecerse demandas contra los clientes para evitar injusticias, imposiciones o fraudes*". (Énfasis suplido.) 4 L.P.R.A. Ap. IX.

## IV

 Bajo esta axiología ética, el licenciado Santos Vías incurrió en un serio error de juicio deontológico. Su percepción de que la señora Cordero Rodríguez había aprovechado injustamente el fruto legítimo de sus labores y sus diligen-

cias profesionales —aun cuando fuera correcta— no justificaba su proceder. Todo tiende a indicar que actuó festinadamente en dos (2) ocasiones: una al renunciar a los honorarios a que era acreedor hasta ese momento, en ocasión de pedir el relevo de su encomienda, y otra, cuando presentó la acción en cobro de tales honorarios y prosiguió la misma. Máxime, que llevó esa acción hasta sus últimas consecuencias: embargo y venta en pública subasta de la propiedad que específicamente se había acordado *sería siempre excluida de cualquier contingencia o riesgo de cobro de honorarios de abogado.*

Lo expuesto, de ordinario, sería suficiente para ordenar una querella formal y, en su oportunidad, posteriormente decretar su suspensión del ejercicio de abogado. Sin embargo, la comparecencia del licenciado Santos Vías nos convence de que, salvo este incidente, estamos ante un profesional íntegro y honrado que incurrió en un lamentable error de juicio de perfiles éticos. Por esa razón descartamos al presente ese curso de acción.

Ahora bien, sus errores y sus omisiones profesionales han ocasionado un daño. Interpretamos su disposición de devolver inmediatamente la suma de $6,000 como un ofrecimiento tendente a corregir ese error mediante una compensación económica. *In re Pagán Ayala*, 117 D.P.R. 180 (1986). Así visualizada, cuantitativamente la oferta no es suficiente. Para lograr plenamente ese propósito, se impone otra avenida decisoria. Después de todo, el resultado neto de su acción fue que la señora Cordero Rodríguez perdió en pública subasta el inmueble que constituía su hogar y fue obligada a desalojarlo. Reiteradamente ha reclamado su devolución. Aunque como pedido específico estamos impedidos de concederlo, concluimos que esa lesión patrimonial, en la dimensión ética, sí es remediable mediante la devolución de la cantidad que representaba el valor líquido (*equity*) de esa propiedad, más los intereses devengados desde esa fecha. Ese es el pre-

cio justo que en este lamentable incidente le corresponde pagar al licenciado Santos Vías.

A tal efecto, le concedemos el término de noventa (90) días. Para su implantación, a su costo, se determinará el valor líquido (*equity*) de dicha propiedad a la fecha en que fue subastada. Ese valor será la suma que deberá devolver el licenciado Santos Vías. Este trámite se realizará con la intervención directa del Procurador General o de su representante. Una vez informado el Tribunal de su cumplimiento, procederemos a darle reposo final a este asunto.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López no intervino.